**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE WASTE MANAGEMENT DATA
BREACH LITIGATION

Case No. 1:21-cv-06199-DLC

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT USA WASTE-
MANAGEMENT RESOURCES, LLC'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS ..................................................................................3

ARGUMENT ...........................................................................................................3

    I.     Plaintiffs' common law claims should be dismissed. ..............................4

         A.     Texas law applies to Plaintiffs' common law claims for negligence
              and breach of confidence. ............................................................4

              i.     An actual conflict exists between New York and Texas law
                      with respect to Plaintiffs' negligence and breach of
                      confidence claims............................................................4

              ii.    Texas has the most significant interest in this dispute. ...................5

         B.     Plaintiffs fail to state a claim for negligence because WM had no
              duty to protect Plaintiffs' PII from the Incident, and even if it did,
              Texas's economic loss rule bars Plaintiffs' claim. ......................7

              i.     WM did not have a legal duty to protect Plaintiffs' PII. .................7

               ii.    The economic loss rule bars Plaintiffs' negligence claim..............8

         C.     Plaintiffs have not alleged that WM disclosed or improperly used
              their PII and have therefore failed to state a claim for breach of
              confidence. ............................................................................10

         D.     Plaintiffs cannot allege a breach of contract claim based on WM's
              Employee Handbook.................................................................11

         E.     Plaintiffs fail to state a claim for breach of implied contract.....................12

         F.     There is no fiduciary relationship between WM and its employees
              to support a breach of fiduciary duty claim. ..............................15

         G.     Plaintiffs fail to state a viable claim for unjust enrichment. ......................16

    II.    Plaintiffs' California statutory claims should be dismissed. .................................18

         A.     Plaintiffs fail to state a claim under the CCPA. ........................................19

          B.     Plaintiffs fail to state a claim under the UCL. .........................................22

          C.     Plaintiffs fail to state a claim under the CRA. .........................................23

    III.   Plaintiffs' claims for declaratory and injunctive relief should be dismissed. ........25

CONCLUSION...........................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*,
No. A-14-CA-00847-SS, 2016 WL 900577 (W.D. Tex. Mar. 2, 2016) ..................................... 5

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
No. 19-CV-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ................................. 22

*Antaeus Enters., Inc. v. SD-Barn Real Estate, L.L.C.*,
480 F. Supp. 2d 734 (S.D.N.Y. 2007) ..................................................................................... 6

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ..................................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 3, 20, 21, 22

*Atl. Richfield Co. v. Misty Prods., Inc.*,
820 S.W.2d 414 (Tex. App.—Houston [14th Dist.] 1991, writ denied).................................. 10

*Austin v. Kroger Tex., L.P.*,
465 S.W.3d 193 (Tex. 2015) .................................................................................................. 8

*Balk v. N.Y. Inst. of Tech.*,
683 F. App'x 89 (2d Cir. 2017) .............................................................................................11

*Barton v. Whataburger, Inc.*,
276 S.W.3d 456 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)..................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................... 3

*Berg v. Empire Blue Cross & Blue Shield*,
105 F. Supp. 2d 121 (E.D.N.Y. 2000) ................................................................................... 12

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006) ................................................................................................. 17

*Bishop v. Shorter Univ., Inc.*,
No. 4:15-c-0033-HLM, 2015 WL 13753710 (N.D. Ga. June 4, 2015) ................................... 15

*Brown v. Sabre, Inc.*,
173 S.W.3d 581 (Tex. App.—Fort Worth 2005, no pet.) ................................................... 11-12

*Brumfield v. Trader Joe's Co.*,
No. 17 Civ. 3239 (LGS), 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ................................ 18

*Buonasera v. Honest Co., Inc.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016) .................................................................................... 18

*Caniglia v. Chi. Tribune-N.Y. News Syndicate, Inc.*,
612 N.Y.S.2d 146 (N.Y. App. Div. 1994).......................................................................... 13-14

*Carlsen v. GameStop, Inc.*,
  833 F.3d 903 (8th Cir. 2016) ................................................................................... 17

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ..................................................................... 20

*Cavagnuolo v. Rudin*,
  No. 94 CIV. 0585 (SS), 1996 WL 79861 (S.D.N.Y. Feb. 26, 1996) .......................... 6

*Chiste v. Hotels.com, L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010) ..................................................................... 25

*Cooney v. Chi. Pub. Schs.*,
  407 Ill. App. 3d 358 (Ill. App. Ct. 2010) .................................................................. 8

*Corsello v. Verizon N.Y. Inc.*,
  18 N.Y.3d 777 (N.Y. 2012) ............................................................................... 17-18

*Cuomo v. Mahopac Nat'l Bank*,
  774 N.Y.S.2d 779 (N.Y. App. Div. 2004) ................................................................ 15

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
  No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ........... 23

*Eagle Oil & Gas Co. v. Shale Expl., LLC*,
  549 S.W.3d 256 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) ................. 5, 10

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
  614 F. App'x 731 (5th Cir. 2015) ............................................................................ 13

*Exxon Corp. v. Tidewell*,
  867 S.W.2d 19 (Tex. 1993) ...................................................................................... 8

*Fierro v. USA Waste-Management Resources, LLC, et al.*,
  No. 1:21-cv-06147 (S.D.N.Y. filed July 19, 2021) .................................................. 20

*First Choice Fed. Credit Union v. Wendy's Co.*,
  No. 16-506, 2018 WL 2729264 (W.D. Pa. May 9, 2018) ........................................... 7

*Foley v. Danile*,
  346 S.W.3d 687 (Tex. App.—El Paso 2009, no pet.) ............................................... 11

*Frezza v. Google Inc.*,
  No. 12-cv-00237-RMW, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) ................... 14

*Gardiner v. Walmart Inc.*,
  No. 20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ......................... 9

*Giordano v. Thomson*,
  564 F.3d 163 (2d Cir. 2009) ................................................................................... 17

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*,
  449 F.3d 377 (2d Cir. 2006) ................................................................................. 5, 6

*Goldman v. Metro. Life Ins. Co.*,
  5 N.Y.3d 561 (N.Y. 2005) ....................................................................................... 17

*Gordon v. Hain Celestial Grp., Inc.*,
No. 16-cv-6526, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017)...................................... 18

*Hammond v. The Bank of N.Y. Mellon Corp.*,
No. 08 Civ 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010).................. 13, 16

*HSA Residential Mortg. Servs. of Tex. v. Casuccio*,
350 F. Supp. 2d 352 (E.D.N.Y. 2003) ............................................................................ 4

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014)............................................................................ 24

*In re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009*,
798 F. Supp. 2d 481 (W.D.N.Y. 2011) ........................................................................... 6

*In re Ambry Genetics Data Breach Litig.*,
No. SACV 20-00791-CJC (KESx), 2021 WL 4891610 (C.D. Cal. Oct. 18, 2021).11, 16, 22, 23

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................................... 18

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ............. 11, 23, 24-25

*In re GE/CBPS Data Breach Litig.*,
No. 20 Civ. 2903 (KPF), 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) .............................11, 16

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
MDL No. 2046, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) .................................... 9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) .......................................................................9-10

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ....................................................................................... 14

*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000) ........................................................................................ 16

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)...................................................................................................... 4

*Lapine v. Seinfeld*,
918 N.Y.S.2d 313 (N.Y. Sup. Ct. 2011) .................................................................. 13, 15

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997) .....................................................................................5-6

*Leary v. Al-Mubaraki*,
No. 18-CV-0048-LTS-HBP, 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019)........................... 12

*Lobosco v. N.Y. Tel. Co./NYNEX*,
96 N.Y.2d 312, (N.Y. 2001) ........................................................................................ 12

*Lone Star Nat'l Bank, N.A. v. Heartland Payment Sys., Inc.*,
729 F.3d 421 (5th Cir. 2013) ....................................................................................... 10

*Longenecker-Wells v. Benecard Servs. Inc.*,
  658 F. App'x 659 (3rd Cir. 2016)................................................................ 14

*Maag v. U.S. Bank, Nat'l Ass'n*,
  No. 1-cv-00031-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021)...................... 21

*Maas v. Cornell Univ.*,
  94 N.Y.2d 87 (N.Y. 1999) ......................................................................... 13

*Mackey v. Belden, Inc.*,
  No. 4:21-cv-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) ................... 6

*Marcaurel v. USA Waste-Management Resources, LLC*,
  No. 1:21-cv-06199 (S.D.N.Y. filed July 20, 2021) ....................................... 20

*Meadows v. Hartford Life Ins. Co.*,
  492 F.3d 634 (5th Cir. 2007)..................................................................... 15

*Newman v. Total Quality Logistics, LLC*,
  No. 1:20CV173, 2021 WL 1192669 (S.D. Ohio Mar. 30, 2021)............................ 9

*Odom v. Kroger Tex., L.P.*,
  No. 3:13-CV-0579-D, 2014 WL 585329 (N.D. Tex. Feb. 14, 2014) ...................... 8

*Pagayon v. Exxon Mobil Corp.*,
  536 S.W.3d 499 (Tex. 2017) .................................................................... 7, 8

*Phillips v. Frey*,
  20 F.3d 623 (5th Cir. 1994) ..................................................................... 10

*Price v. L'Oreal USA, Inc.*,
  No. 17 Civ. 614(LGS), 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) ..................... 18

*R.P. Small Corp. v. Land Dep't, Inc.*,
  505 F. Supp. 3d 681 (S.D. Tex. 2020)................................................ 9, 15, 16

*Rapoport v. Asia Elecs. Holding Co., Inc.*,
  88 F. Supp. 2d 179 (S.D.N.Y. 2000) ....................................................... 19-20

*Rather v. CBS Corp.*,
  886 N.Y.S.2d 121 (N.Y. App. Div. 2009)..................................................11, 15

*Razuki v. Caliber Home Loans, Inc.*,
  No. 17-CV-1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ........ 22, 25

*Reveille Trucking, Inc. v. Lear Corp.*,
  No. 4:14-CV-511, 2017 WL 661521 (S.D. Tex. Feb. 17, 2017) ......................... 16

*Richter v. Carnival Corp.*,
  No. 3:18-cv-2172-N, 2020 WL 1876098 (N.D. Tex. Apr. 15, 2020)................... 5, 10

*Rivera v. N.Y.C. Health & Hosps. Corp.*,
  191 F. Supp. 2d 412 (S.D.N.Y. 2002) .......................................................... 4

*Sackin v. TransPerfect Glob., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ......................................................... 5

*Schmitt v. SN Servicing Corp.*,
No. 21-cv-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .................................. 7

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................................... 22

*Spinelli v. Nat'l Football League*,
903 F.3d 185 (2d Cir. 2018) ............................................................................................ 15

*Sport Supply Grp., Inc. v. Columbia Cas. Co.*,
335 F.3d 453 (5th Cir. 2003) ............................................................................................ 4

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
No. 1:15-cv-00211 (LGS)(SDA), 2020 WL 1442915 (S.D.N.Y. Jan. 27, 2020) ...................... 6

*Thymes v. Gillman Cos.*,
No. CV H-17-2834, 2018 WL 1281852 (S.D. Tex. Mar. 9, 2018) ......................................... 13

*Timberwalk Apartments, Partners, Inc. v. Cain*,
972 S.W.2d 749 (Tex. 1998) .............................................................................................. 8

*Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*,
No. 15-4254, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ................................................ 25

*U.S. v. Erie Cty, N.Y.*,
724 F. Supp. 2d 357 (W.D.N.Y. 2010) ............................................................................... 21

*Veridian Credit Union v. Eddie Bauer, LLC*,
295 F. Supp. 3d 1140 (W.D. Wash. 2017) ........................................................................... 7

*Vosburgh v. Burnt Hills – Ballston Lake Ctr. Sch. Dist.*,
No. 1:18-cv-1003, 2019 WL 315054 (N.D.N.Y. Jan. 24, 2019) ........................................... 20

*Wallace v. Health Quest Sys., Inc.*,
No. 20-cv-545, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ................................................ 5

*Weinberg v. Advanced Data Processing, Inc.*,
147 F. Supp. 3d 1359 (S.D. Fla. 2015) .............................................................................. 16

*Weiner v. Lazard Freres & Co.*,
672 N.Y.S.2d 8 (N.Y. App. Div. 1998) ............................................................................... 17

*Werden v. Nueces Cty. Hosp. Dist.*,
28 S.W.3d 649 (Tex. App.—Corpus Christi 2000, no pet.) ................................................... 12

*Willingham v. Glob. Payments, Inc.*,
No. 12-cv-01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ................................................ 8

## STATUTES AND RULE

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 22
Cal. Civ. Code § 1798.150(a)(1) .................................................................................... 19, 21
Cal. Civ. Code § 1798.150(b) ........................................................................................ 19, 20
Cal. Civ. Code § 1798.82(a) .............................................................................................. 23
Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 3

Defendant USA Waste-Management Resources, LLC ("WM") files this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint (the "Complaint" or "Compl.") [ECF No. 42] pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) based on Plaintiffs' failure to state a claim upon which relief may be granted. For the following reasons, the Court should grant the Motion and dismiss the Complaint in its entirety with prejudice.

## INTRODUCTION

The Court should dismiss the Complaint pursuant to Rule 12(b)(6) as Plaintiffs have failed to allege a single claim upon which relief may be granted.

*First*, Plaintiffs' negligence claim should be dismissed as Texas[1] has not recognized that employers have a duty to protect employee personally identifiable information ("PII") from access as a result of a data breach caused by an unauthorized third party. Plaintiffs therefore cannot establish the duty element of their alleged negligence claim. Texas's economic loss rule likewise bars Plaintiffs' negligence claim, which alleges only the same economic injuries Plaintiffs seek to redress through their breach of contract and implied contract claims.

*Second*, Plaintiffs cannot assert a breach of confidence claim because they cannot plausibly allege that WM affirmatively disclosed or improperly used their personal information.

*Third*, Plaintiffs' breach of contract claim fails because employee handbooks are generally not considered binding, express contracts, and WM's Employee Handbook expressly states that it does not create a binding contract between WM and its employees.

*Fourth*, Plaintiffs fail to state a claim for breach of implied contract because their

---

[1] As discussed in Section I.A below, under New York's choice-of-law rules, Plaintiffs' negligence and breach of confidence claims should be considered under Texas, rather than New York, state law.

conclusory allegations that they formed implied contracts with WM by providing their personal information allege neither the material contract terms of such alleged agreements nor a manifestation of assent by WM.

*Fifth*, because Plaintiffs have not and cannot allege the existence of a fiduciary relationship between Plaintiffs and WM, their breach of fiduciary duty claim, which is also entirely duplicative of their breach of implied contract claim, should be dismissed.

*Sixth*, Plaintiffs fail to state a claim for unjust enrichment as their breach of contract allegations bar their request for quasi-contractual relief, which duplicates their alleged tort and statutory violations and fails to adequately allege WM unfairly benefitted at Plaintiffs' expense.

*Seventh*, aside from conclusory and unsupported recitations of the terms of the statute, Plaintiffs have not alleged that their PII was exfiltrated, stolen, or disclosed as a result of the data breach or that WM failed to maintain reasonable and appropriate security policies and procedures and therefore have not pleaded the facts necessary to bring the action within the scope of California's Consumer Privacy Act ("CCPA"). Plaintiffs' CCPA claim is likewise subject to dismissal for failure to comply with the statutory notice requirement and because WM has cured all alleged violations of the statute.

*Eighth*, because Plaintiffs fail to allege any facts indicating they lack an adequate legal remedy for any alleged harm as a result of the breach, they are not entitled to equitable remedies under California's Unfair Competition Law ("UCL"), and their UCL claim should be dismissed.

*Ninth*, Plaintiffs do not have statutory standing to assert a claim under California's Customer Records Act ("CRA") because they have not alleged that they suffered any incremental harm specifically traceable to WM's alleged delay in notifying them of the breach. Plaintiffs have likewise failed to allege facts indicating WM's notice of the breach was unreasonably delayed, and

their CRA claim should therefore be dismissed.

**Tenth**, and finally, for the same reasons as their substantive claims, Plaintiffs' purely derivative requests for declaratory and injunctive relief should also be dismissed.

Accordingly, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

## FACTUAL ALLEGATIONS

This case arises from a data breach incident (the "Incident") that occurred in January 2021 when a third party hacked into WM's system. Compl. ¶ 11. WM determined that the Incident may have involved files containing employees' PII. *Id.* Out of an abundance of caution, WM provided notice to its current and former employees and offered one year of credit monitoring to remediate any harm allegedly resulting from the Incident. *See id.* ¶¶ 12, 207.

The named Plaintiffs in this action, Janie Marcaurel, Gabriele Fierro, Shelby Ingram, Mark Krenzer, Mary J. Fusilier, Clifford Harris, Nolan Brodie, Miguel Montelongo, Gerald Davis, and Steven Dudley (collectively, "Plaintiffs") are current or former WM employees whose private information was allegedly compromised as a result of the Incident. *See id.* ¶¶ 17-26. Plaintiffs bring ten claims for relief and seek damages as well as declaratory and injunctive relief.

## ARGUMENT

The Court should dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) because Plaintiffs have failed to state a claim upon which relief may be granted. To survive dismissal under Rule 12(b)(6), the Complaint must allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Claims have "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Each of Plaintiffs' claims

fails to state a claim for relief and should therefore be dismissed.

**I.     Plaintiffs' common law claims should be dismissed.**

    **A.     Texas law applies to Plaintiffs' common law claims for negligence and breach of confidence.**

When conducting a choice-of-law analysis, the court should look to the forum state's choice-of-law rules – in this case, New York's – to determine which state's law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York's choice-of-law rules, New York law applies unless an actual conflict exists between New York law and the law of the proposed jurisdiction. *HSA Residential Mortg. Servs. of Tex. v. Casuccio*, 350 F. Supp. 2d 352, 362 (E.D.N.Y. 2003).

        **i.     An actual conflict exists between New York and Texas law with respect to Plaintiffs' negligence and breach of confidence claims.**

There is an actual conflict between New York and Texas law with respect to Plaintiffs' common law claims for negligence and breach of confidence.[2]  While the basic elements of a common law negligence claim are facially similar under New York and Texas law and include "(1) a duty owed by the defendant to the plaintiff to use reasonable care, (2) breach of that duty by the defendant, and (3) injury to the plaintiff," *see, e.g.*, *Rivera v. N.Y.C. Health & Hosps. Corp.*, 191 F. Supp. 2d 412, 417 (S.D.N.Y. 2002); *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 466 (5th Cir. 2003), their application in each state differs under the circumstances at issue here.  In particular, unlike New York, Texas has not recognized (and would not recognize) that employers have a legal duty to protect their employees' PII from third-party access as a result of a data breach and likewise has not recognized an independent, legal duty that would overcome the economic loss rule with respect to a negligence claim premised on alleged economic injury resulting from a

---

[2] New York law applies to Plaintiffs' remaining common law claims, as there is no conflict between New York and Texas law with respect to those causes of action.

data breach.  *See Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748-49 (S.D.N.Y. 2017) (recognizing a duty to protect employee PII under New York law and allegations of a legal duty independent of the contract itself sufficient to overcome the economic loss doctrine).

A conflict similarly exists between New York and Texas law with respect to Plaintiffs' breach of confidence claim.  Under Texas law, a breach of confidence claim is synonymous with misappropriation of a trade secret,[3] *see Richter v. Carnival Corp.*, No. 3:18-cv-2172-N, 2020 WL 1876098, at *5 (N.D. Tex. Apr. 15, 2020), and requires proof of an *affirmative* use or disclosure of the trade secret or data at issue.  *See, e.g.*, *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-00847-SS, 2016 WL 900577, at *5 (W.D. Tex. Mar. 2, 2016) ("Misappropriation requires actual use or disclosure of a trade secrete without consent.").  New York law, on the other hand, likens breach of confidence to a breach of fiduciary duty claim and allows liability when a defendant passively fails to protect the data or information at issue.  *Wallace v. Health Quest Sys., Inc.*, No. 20-cv-545, 2021 WL 1109727, at *12-13 (S.D.N.Y. Mar. 23, 2021) (finding a party may breach a duty of confidentiality through its negligent failure to safeguard confidential information).

### ii.    Texas has the most significant interest in this dispute.

Given the presence of a conflict, New York's choice-of-law rules next consider whether the claim at issue sounds in contract or in tort.  *See GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 383 (2d Cir. 2006).  For tort claims, like Plaintiffs' negligence and breach of confidence claims, New York law relies on an interest-analysis test "where 'the law of the jurisdiction with the most significant interest in, or relationship to, the dispute' is applied." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 399 (S.D.N.Y. 2010) (quoting *Lazard*

---

[3] Texas courts generally consider breach of confidence an element of a misappropriation of trade secret claim as opposed to an independent cause of action separate and distinct from a misappropriation claim. *See, e.g.*, *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd).

*Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). "This interests analysis requires an evaluation of both the significant contacts and the location of those contacts as well as whether the purpose of the law is to regulate conduct or allocate loss." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, No. 1:15-cv-00211 (LGS) (SDA), 2020 WL 1442915, at *17 (S.D.N.Y. Jan. 27, 2020) (internal quotations and citations omitted). "[T]he significant contacts are, almost exclusively, the parties' domicile and the locus of the tort." *Cavagnuolo v. Rudin*, No. 94 CIV. 0585 (SS), 1996 WL 79861, at *1 (S.D.N.Y. Feb. 26, 1996). When evaluating the parties' domicile and the locus of the tort, courts consider whether the claim is conduct-regulating or loss-allocating, and for conduct-regulating torts, the jurisdiction where the tort occurred is usually the controlling factor.[4] *GlobalNet Financial.com, Inc.*, 449 F.3d at 384-85.

Here, the parties' domicile and the locus of the tort both support application of Texas as opposed to New York law to Plaintiffs' negligence and breach of confidence claims. With respect to the domicile of the parties, WM is headquartered in Texas, which is also WM's principal place of business, whereas ***none*** of the Plaintiffs is a resident of New York. *See* Compl. ¶¶ 17-27.

The locus of the alleged tort also supports application of Texas law. Both Plaintiffs' negligence and breach of confidence claims stem from allegations that WM failed to protect their PII from access by an unauthorized third-party intruder. Under these circumstances, the locus of the tort is considered largely fortuitous, and courts therefore look to the place of the wrongful conduct for choice of law purposes. *See, e.g.*, *In re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009*, 798 F. Supp. 2d 481, 489 (W.D.N.Y. 2011); *Mackey v. Belden, Inc.*, No. 4:21-cv-00149-JAR, 2021 WL 3363174, at *2-3 (E.D. Mo. Aug. 3, 2021) ("This case offers a quintessential

---

[4] A conduct-regulating tort is one that has "the prophylactic effect of governing conduct to prevent injuries from occurring." *Antaeus Enters., Inc. v. SD-Barn Real Estate, L.L.C.*, 480 F. Supp. 2d 734, 742 (S.D.N.Y. 2007). Laws that allocate loss are those such as wrongful death statutes, charitable immunity statutes, vicarious lability statutes, and contribution rules. *See GlobalNet Financial.com, Inc.*, 449 F.3d at 384.

example of when the location of the plaintiff's injury is fortuitous and the law of the place where the defendant's conduct occurred should be given more weight."); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1155 (W.D. Wash. 2017) (Under a significant interest test, the court looked to the place of the defendant's conduct because the place of injury was fortuitous.); *First Choice Fed. Credit Union v. Wendy's Co.*, No. 16-506, 2018 WL 2729264, at *6 (W.D. Pa. May 9, 2018) (same). The place of all of WM's alleged wrongful conduct in this case is Texas – WM's headquarters and principal place of business. *See Schmitt v. SN Servicing Corp.*, No. 21-cv-03355-WHO, 2021 WL 3493754, at *4 (N.D. Cal. Aug. 9, 2021) (collecting data breach cases and finding that the law of the defendant's headquarter should be applied). Plaintiffs make no allegations that any conduct or alleged injury related to the Incident occurred in New York, and Plaintiffs have alleged no connection between New York and the Incident. Texas therefore bears the most significant interest to the claims at issue, and Texas law should apply to Plaintiffs' negligence and breach of confidence claims.

**B.** **Plaintiffs fail to state a claim for negligence because WM had no duty to protect Plaintiffs' PII from the Incident, and even if it did, Texas's economic loss rule bars Plaintiffs' claim.**

**i.** **WM did not have a legal duty to protect Plaintiffs' PII.**

As discussed above, Texas courts have not recognized, and would not recognize, that employers have a duty to protect employee PII from access as a result of a third-party data breach.

Under Texas law, there is generally no duty to protect against the actions of others – like the third-party actors who perpetrated the Incident at issue in this case – absent a special relationship that gives rise to a duty to aid or protect. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017). Texas law recognizes that the employment relationship may create such a duty but only in certain limited circumstances. *Id.* ("We have acknowledged limited instances where an employer has a duty to control its employee and is directly liable when it fails to do so.").

Employers do not have a duty to simply exercise reasonable care in all circumstances. *See id.* at 506. Employers may owe employees certain, limited duties related to hiring, supervision, and working conditions. *See Odom v. Kroger Tex., L.P.*, No. 3:13-CV-0579-D, 2014 WL 585329, at *4 (N.D. Tex. Feb. 14, 2014). But "even in an employer-employee relationship, the employer is not an insurer of the employee's safety." *Exxon Corp. v. Tidewell*, 867 S.W.2d 19, 21 (Tex. 1993). Employers do not have a duty to warn employees of hazards of employment that are commonly known or already appreciated by the employees or to protect employees from third-party misconduct or criminal activity that is not reasonably foreseeable. *See, e.g.*, *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 211 n.19 (Tex. 2015); *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 462-63, 466-69 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (finding that an employer did not have a duty to protect employees against a violent crime, even though general crime was foreseeable); *see also Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998).

Texas courts have not extended the circumstances under which employers are required to protect employees to include a general duty to protect employee PII from a third-party data breach and would not do so in light of the well-recognized limits on an employer's duty under Texas law. *Cf., e.g.*, *Cooney v. Chi. Pub. Schs.*, 407 Ill. App. 3d 358, 361-63 (Ill. App. Ct. 2010) (declining to create a "new legal duty" and finding employers did not have a duty to safeguard employees' PII under Illinois law); *see also Willingham v. Glob. Payments, Inc.*, No. 12-cv-01157, 2013 WL 440702, at *19 (N.D. Ga. Feb. 5, 2013) (finding that, under Georgia law, defendant did not have a "duty to utilize commercially reasonable methods to safeguard Plaintiffs' PII").

### ii.    The economic loss rule bars Plaintiffs' negligence claim.

Texas law precludes recovery on tort claims for purely economic losses, unless the conduct

at issue breaches an independent legal duty. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 2046, 2011 WL 1232352, at *21 (S.D. Tex. Mar. 31, 2011); *see also R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 706 (S.D. Tex. 2020).

Here, Plaintiffs' negligence claim seeks recovery of only economic damages, including damages for actual identity theft, loss of the opportunity to determine how to use their PII, theft of their PII, out-of-pocket expenses, lost opportunity costs, costs associated with placing freezes on their accounts, and future costs – the same economic injuries Plaintiffs seek to redress through their breach of contract and implied contract claims. Compl. ¶ 243; *see also Gardiner v. Walmart Inc.*, No. 20-cv-04618-JSW, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021) (noting that lost time is an economic harm). As such, Plaintiffs' negligence claim is nothing more than a restatement of their breach of contract and implied contract claims. While WM disputes that Plaintiffs have sufficiently alleged a breach of contract or breach of implied contract claim, the only duty Plaintiffs have alleged in support of their negligence claim arises out of Plaintiffs' allegations of an employment agreement between WM and Plaintiffs. *See* Compl. ¶ 238. Moreover, for the reasons discussed above, Plaintiffs cannot overcome the economic loss rule by alleging that WM's conduct breached an independent legal duty because Texas law has not – and would not – recognize such a duty. Accordingly, the economic loss rule bars Plaintiffs' negligence claim. *Cf., e.g.*, *Newman v. Total Quality Logistics, LLC*, 1:20CV173, 2021 WL 1192669, at *7 (S.D. Ohio Mar. 30, 2021) (In a data breach case, the Southern District of Ohio dismissed plaintiffs' negligence claim because the claims were premised on the same claims for economic damages that would arise from a breach of contract claim.); *Gardiner*, 2021 WL 2520103, at *8-9 (finding the economic loss rule barred plaintiff's negligence claim in the data breach context); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966-73 (S.D. Cal.

2014) (holding that Massachusetts's and California's economic loss doctrines barred plaintiffs' negligence claims arising from a data breach); *see also Lone Star Nat'l Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 423 (5th Cir. 2013) (parties to a data breach suit agreed Texas's economic loss doctrine would bar the plaintiffs' negligence claim).

### C. Plaintiffs have not alleged that WM disclosed or improperly used their PII and have therefore failed to state a claim for breach of confidence.

Under Texas law, a breach of confidence claim mirrors a misappropriation of trade secrets claim. *See Richter*, 2020 WL 1876098, at *5. "One is liable for *disclosure* of trade secrets if (a) he discovers the secret by improper means, or (b) his *disclosure or use* constitutes a breach of confidence reposed in one who is in a confidential relationship with another who discloses protected information to him." *Phillips v. Frey*, 20 F.3d 623, 630 (5th Cir. 1994) (emphasis added); *see also Atl. Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414, 421-22 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("Liability occurs if one discloses or uses another's trade secrets, without privilege to do so, if (a) he discovers the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him. Thus, actual use or disclosure . . . is a required element." (internal citation omitted)).

Here, however, Plaintiffs fail to allege that WM disclosed or misused their PII. *See Phillips*, 20 F.3d 630. To the contrary, Plaintiffs allege that it was a third-party intruder who accessed their data. *See* Compl. ¶ 11. They do not allege that WM affirmatively used, shared, or provided such third party with any of Plaintiffs' information or that WM made any other improper use of the information. *See Eagle Oil & Gas Co.*, 549 S.W.3d at 273 ("In the context of trade secret cases, 'use' means commercial use for the purpose of profit, including use likely to injure the secret's owner, enrich the defendant, or aid the defendant in its own research and development."). The alleged actions of an unauthorized third-party do not constitute a disclosure

or misuse by WM.[5]  *See, e.g.*, *In re Ambry Genetics Data Breach Litig.*, No. SACV 20-00791-CJC (KESx), 2021 WL 4891610, at *8 (C.D. Cal. Oct. 18, 2021) (dismissing plaintiff's breach of confidence claim because they did not allege that defendant affirmatively disclosed their PII); *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at *21-22 (M.D. Fla. Jan. 27, 2020) (same).  As such, Plaintiffs have failed to and cannot plausibly allege a breach of confidence by WM, and their breach of confidence claim should be dismissed.

### D.     Plaintiffs cannot allege a breach of contract claim based on WM's Employee Handbook.

To allege breach of contract under both New York and Texas law, Plaintiffs must plead (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages.  *See Balk v. N.Y. Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017) (summary opinion); *Foley v. Danile*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.).

Plaintiffs allege that as a condition of their employment with WM, they were required to sign an Employee Handbook, which constitutes a "written contractual agreement" between them.  Compl. ¶ 246.  But, under both New York and Texas law, routinely issued employee handbooks are generally not considered binding, express contracts.  *See In re GE/CBPS Data Breach Litig.*, No. 20 Civ. 2903 (KPF), 2021 WL 3406374, at *11 (S.D.N.Y. Aug. 4, 2021) ("The court is mindful that '[r]outinely issued employee manuals, handbooks and policy statements should not be converted into binding employment agreements.'"); *see also Brown v. Sabre, Inc.*, 173 S.W.3d 581,

---

[5] Plaintiffs' breach of confidence claim fares no better under New York law because Plaintiffs cannot establish that WM and Plaintiffs were in a confidential relationship.  New York law does not recognize a confidential relationship, which it likens to a fiduciary relationship, between employers and employees, and Plaintiffs do not provide any additional allegations to suggest that their relationship with WM rose to the level of imposing a duty of trust and confidentiality on WM.  *See, e.g.*, *Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (N.Y. App. Div. 2009) ("The law in this Department, and indeed enunciated in every reported appellate-division-level case, is that employment relationships do not create fiduciary relationships.  Simply put, "[the employer] did not owe plaintiff, as employee, a fiduciary duty.").

585 (Tex. App.—Fort Worth 2005, no pet.) ("As a general rule employee handbooks and policy manuals constitute general guidelines in the employer/employee relationship and do not create implied contracts between the employer and employee.").

And, in this case, WM's Employee Handbook expressly states – and the employees signing it expressly agreed – that it does not create a binding contract between WM and its employees:

> I further understand that the statements contained in the handbook and any other Company policies are not intended to create any contractual or other legal obligations. I also understand that [WM] may modify or rescind any of its policies, benefits or practices at any time, except for its policy of at-will employment and those policies required by law.

Decl. Michelle A. Reed Supp. Def. USA Waste-Management Resources, LLC's Mot. Dismiss Pls.' Am. Consolidated Class Action Compl. ("Decl. of M. Reed"), Ex. A at 118 (Employee Handbook excerpt).[6] Both New York and Texas law acknowledge and enforce contractual disclaimer clauses, like this clause in WM's Employee Handbook. *See Leary v. Al-Mubaraki*, No. 18-CV-0048-LTS-HBP, 2019 WL 4805849, at *5 (S.D.N.Y. Sept. 30, 2019) ("'employee manuals, handbooks and policy statements' containing contract disclaimers are not 'binding employment agreements' because the disclaimer prevents the creation of a contract"); *Werden v. Nueces Cty. Hosp. Dist.*, 28 S.W.3d 649, 651 (Tex. App.—Corpus Christi 2000, no pet.) (disclaimer included in the employee handbook did not express an intent to create a binding contract); *see also* (*Lobosco v. N.Y. Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (N.Y. 2001) ("An employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer.").

### E.    Plaintiffs fail to state a claim for breach of implied contract.

Plaintiffs' conclusory allegations that they formed implied contracts with WM by providing

---

[6] When a plaintiff sues primarily on the basis of a document, such as an alleged contract, and fails to attach the document, courts can consider the document at the motion-to-dismiss stage, even though the document is outside of the pleadings. *See Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp. 2d 121, 126 (E.D.N.Y. 2000).

their personal information are insufficient to allege the existence of an implied contract because they allege neither material contract terms nor manifestation of assent.

To state a claim for breach of implied contract under New York or Texas law, a plaintiff must first establish that a binding contract exists. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ 6060(RMB)(RLE), 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010); *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015). An implied contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter. *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93-94 (N.Y. 1999); *Thymes v. Gillman Cos.*, No. CV H-17-2834, 2018 WL 1281852, at *2 (S.D. Tex. Mar. 9, 2018) ("To plead the existence of a valid implied contract, a plaintiff must establish '(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.'"). "A contract cannot be implied-in-fact unless there has been a 'meeting of the minds' between the parties in question." *Hammond*, 2010 WL 2643307, at *11.

Here, Plaintiffs fail to allege the material terms of the purported implied contract and instead base their allegations on a generalized statement that by requiring Plaintiffs to provide it with certain PII, WM created an implied promise to "reasonably safeguard and protect" their PII from "unauthorized disclosure and/or use." Compl. ¶¶ 253-57. However, "[u]nder settled law, a contract will not be found to have been formed if it is 'not reasonably certain in its material terms.'" *See Lapine v. Seinfeld*, 918 N.Y.S.2d 313, 318 (N.Y. Sup. Ct. 2011) ("[T]he proponent of the contract must accordingly allege 'in nonconclusory language . . . , the essential terms of the parties' . . . contract, including those specific provisions of the contract upon which liability is predicated, whether the alleged agreement was, in fact, written or oral."); *Caniglia v. Chi. Tribune-N.Y. News*

*Syndicate, Inc.*, 612 N.Y.S.2d 146, 147 (N.Y. App. Div. 1994) (affirming dismissal based on "plaintiffs failure to allege, in nonconclusory language, as required, the essential terms" of the contract); *see also In re SuperValu, Inc.*, 925 F.3d 955, 965–66 (8th Cir. 2019) (affirming dismissal of breach of implied contract claim because "the complaint [did] not sufficiently allege that plaintiffs were party to an implied contract" with defendant to take reasonable measures to protect plaintiffs' card information); *Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659, 662-63 (3rd Cir. 2016) (dismissing a breach of implied contract claim that relies on plaintiffs and defendants "course of conduct," without specifying any company-specific documents or policies from which one could infer an implied contract); *Frezza v. Google Inc.*, 12-cv-00237-RMW, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (granting motion to dismiss breach of implied contract claim based on plaintiffs' conclusory allegations that "by providing their financial data to Google they entered 'into an implied contract with Google'"). Plaintiffs' generic allegation of an implied duty to "reasonably safeguard and protect" is far from reasonably certain and leaves WM and the Court to guess as to material terms of the agreements allegedly formed.

Plaintiffs likewise fail to allege facts indicating that WM assented to be bound by any implied contract requiring it to reasonably safeguard and protect Plaintiffs' PII. Plaintiffs allege that upon hiring them, WM required Plaintiffs to provide their PII and "[i]mplied in these exchanges was a promise by [WM] to ensure that the PII of Plaintiffs and Class members in its possession was only used to provide the agreed-upon compensation and other employment benefits." Compl. ¶ 253. Beyond WM's act of employing Plaintiffs and obtaining their PII, Plaintiffs do not provide ***any*** allegation that WM assented to be bound by an implied agreement to protect Plaintiffs' PII. *See, e.g.*, *Longenecker-Wells*, 658 F. App'x at 662-63 (dismissing breach of contract claim that relied on the defendant's requirement to provide PII as a term of employment

because "[t]his requirement alone did not create a contractual promise to safeguard that information, especially from third party hackers"). Such conclusory allegations are insufficient to allege WM's assent to any alleged implied agreement. *See Lapine*, 918 N.Y.S.2d at 318 (dismissing claim for breach of implied contract where complaint did "not contain any factual allegations of conduct by [defendant] showing that it assented to a contract with plaintiff"); *see also Bishop v. Shorter Univ., Inc.*, 4:15-c-0033-HLM, 2015 WL 13753710, at *7 (N.D. Ga. June 4, 2015) (dismissing implied breach of contract claim where allegations did "not plausibly suggest that [d]efendant intended or assented to a promise to safeguard" plaintiffs' personal information).

**F.     There is no fiduciary relationship between WM and its employees to support a breach of fiduciary duty claim.**

To establish a breach of fiduciary duty claim under either New York or Texas law, Plaintiffs must plead: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (internal quotations and citations omitted) (applying New York law); *see also R.P. Small Corp.*, 505 F. Supp. 3d at 693-94 ("In Texas, the elements of breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his or her fiduciary duty to the plaintiff; and (3) the defendant's breach must result in either injury to the plaintiff or benefit to the defendant.").

Plaintiffs claim that WM owes them a fiduciary duty by virtue of their employment by WM and their provision of PII in connection with that employment. *See* Compl. ¶ 278. But employers do not generally owe fiduciary duties to their employees. *Rather*, 886 N.Y.S.2d at 125; *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("In Texas, employers generally do not owe fiduciary duties to their employees."); *see also, e.g.*, *Cuomo v. Mahopac Nat'l Bank*, 774 N.Y.S.2d 779, 780 (N.Y. App. Div. 2004) ("[T]he arms-length contractual relationship between the

plaintiffs and the defendant did not give rise to a fiduciary relationship."); *R.P. Small Corp.*, 505 F. Supp. 3d at 695 ("[N]ot every relationship involving a high degree of trust and confidence rises to the stature of a formal fiduciary relationship . . . ."). And the fact that Plaintiffs provided WM with their PII in connection with their employment does not create such a duty. *See Hammond*, 2010 WL 2643307, at *10 (granting summary judgment for defendant on plaintiffs' breach of fiduciary duty claim arising from a data breach because there was no proof of the existence of a fiduciary relationship); *see also In re Ambry Genetics Data Breach Litig.*, 2021 WL 4891610, at *7 ("Plaintiffs entered into an arms-length business relationship with [d]efendants, which is insufficient to create a fiduciary duty even though [p]laintiffs entrusted [d]efendants with their confidential information as part of the relationship."); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015) ("[T]he mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship."). Because Plaintiffs have not and cannot allege the existence of a fiduciary relationship between Plaintiffs and WM, their breach of fiduciary duty claim should be dismissed.

Plaintiffs' fiduciary duty claim is likewise subject to dismissal as it is entirely duplicative of their implied contract claim. *See In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *14 ("When a breach of fiduciary duty claim is merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in a cause of action for breach of contract, the claim cannot stand." (quotation marks and citation omitted)).

### G. Plaintiffs fail to state a viable claim for unjust enrichment.

To state a claim for unjust enrichment, a plaintiff must allege: "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *see also Reveille Trucking, Inc. v. Lear Corp.*, 4:14-CV-511, 2017 WL 661521, at *13 (S.D. Tex. Feb. 17, 2017) (stating similar

elements under Texas law).  Plaintiffs may not proceed on unjust enrichment unless they "have properly asserted that a benefit was bestowed . . . by plaintiffs and that defendants will obtain such benefit without adequately compensating plaintiffs therefor."  *Weiner v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 12 (N.Y. App. Div. 1998).

The only benefit Plaintiffs here allege WM received is "their labor and the profits therefrom" and "the cost savings resulting from failing to reasonably expend" additional funds to protect Plaintiffs' PII.  *See* Compl. ¶ 286.  These conclusory assertions fall far short of the required allegations showing that Plaintiffs somehow received less than what they provided through their employment or that WM paid employees any less for their work than they expected to receive.  *See Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (affirming dismissal of unjust enrichment claim because plaintiff did not show that he was paid less than the value of the services he provided); *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) ("[Plaintiff] has alleged neither a benefit conferred in exchange for protection of his PII, nor has he shown how [defendant's] retention of his subscription fee would be inequitable.  He thus has not alleged a claim for unjust enrichment.").  Accordingly, Plaintiffs have failed to adequately allege unjust enrichment, and that claim should be dismissed.

Plaintiffs' unjust enrichment claim is likewise precluded by contract and barred as merely duplicative of their other tort and statutory claims.  A claim for unjust enrichment is "an obligation that the law creates *in the absence of any agreement*."  *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (quoting *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572, (N.Y. 2005)).  Unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello*

*v. Verizon N.Y. Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). When a claim for unjust enrichment "simply duplicates" a "conventional contract or tort claim," it must be dismissed. *Price v. L'Oreal USA, Inc.*, No. 17 Civ 614(LGS), 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017).

Plaintiffs' claim for unjust enrichment here is based on the same underlying conduct as their alleged tort, contract, and statutory claims, i.e. Plaintiffs provided WM with their PII as part of their employment, and WM should have, but failed to, protect their data from the Incident. *See, e.g.*, *Corsello*, 18 N.Y.3d at 790 ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *Brumfield v. Trader Joe's Co.*, No. 17 Civ. 3239 (LGS), 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) (dismissing an unjust enrichment claim because it was "premised on the same alleged misrepresentation" as other statutory and tort claims); *Price*, 2017 WL 4480887, at *5 (dismissing unjust enrichment claim because it is duplicative of the plaintiff's other causes of action); *Gordon v. Hain Celestial Grp., Inc.*, 16-cv-6526 (KBF), 2017 WL 213815, at *7 (S.D.N.Y. Jan. 18, 2017) (same); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567-68 (S.D.N.Y. 2016) (same). Even if Plaintiffs' other claims are defective and subject to dismissal, they cannot remedy those defects by alleging a purely duplicative unjust enrichment cause of action. *Corsello*, 18 N.Y.3d at 791 ("[I]f plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."); *see also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 984 (N.D. Cal. 2016) ("Because [p]laintiffs' New York unjust enrichment claim depends upon [p]laintiffs' breach of contract claims, the Court DISMISSES [p]laintiffs' New York unjust enrichment claim."). As such, Plaintiffs' unjust enrichment claim may not proceed.

## II. Plaintiffs' California statutory claims should be dismissed.

Plaintiffs Marcaurel and Fierro assert three claims under California statutory law: (A) violation of the CCPA; (B) violation of the UCL; and (C) violation of the CRA. For the reasons

set forth below, each of these claims is defective and should be dismissed.

A.    **Plaintiffs fail to state a claim under the CCPA.**

The CCPA provides that:

> Any consumer whose nonencrypted or nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action.

Cal. Civ. Code § 1798.150(a)(1). It states, however, that "if within the 30 days the business actually cures the noticed violation and provides the consumer an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be initiated against the business." *Id.* § 1798.150(b).

Plaintiffs here allege that WM violated the CCPA by "failing to prevent the unauthorized access, exfiltration, theft, and/or disclosure of California Plaintiffs' and California Class members' PII." Compl. ¶ 301. But Plaintiffs have not pleaded the facts necessary to bring the Incident within the scope of the CCPA. Under the express terms of the statute, the CCPA applies only when personal information is subject to both unauthorized access "***and*** exfiltration, theft, or disclosure." Cal. Civ. Code § 1798.150(a)(1) (emphasis added). While the Complaint includes conclusory statements parroting the language of the statute and alleging that an unauthorized third party accessed and exfiltrated, stole, or disclosed their PII as a result of the Incident, *see, e.g.*, Compl. ¶¶ 11, 38, 302, it cites the notice letter WM provided to the Office of the Maine Attorney General, which is attached as Exhibit A to the Complaint, as the sole source of authority for these assertions. *See* Compl. ¶ 2. But that letter contains no statement or indication that any PII was subject to "exfiltration, theft, or disclosure" as a result of the Incident. *See* Compl., Ex. A. Accordingly, the Court need not accept Plaintiffs' allegations as true. *See Rapoport v. Asia Elecs. Holding Co., Inc.*,

88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (If plaintiff's complaint relies on statements in documents outside the complaint and "[i]f these documents contradict the allegations of the amended complaint, the documents control and [the] Court need not accept as true the allegations in the amended complaint."); *see also Iqbal*, 556 U.S. at 678 (The court is "not bound to accept as true a legal conclusion couched as a factual allegation."). Bereft of these conclusory, unsupported allegations, Plaintiffs have failed to plead the facts necessary to state a CCPA claim.

Plaintiffs' CCPA claim is likewise subject to dismissal for failure to comply with the statutory notice requirement. *See* Cal. Civ. Code § 1798.150(b). Plaintiffs filed their original complaints in this matter without awaiting the 30-day pre-suit notice period required under the CCPA to provide WM with an opportunity to cure the alleged violation.[7] Accordingly, Plaintiffs did not comply with the statutory notice requirement, and their CCPA claim should be dismissed. *Cf. Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949-50 (S.D. Cal. 2007) (finding the California Consumer Legal Remedies Act ("CLRA") 30-day notice requirement should be interpreted strictly and dismissing with prejudice plaintiffs' CLRA claim for damages because plaintiffs filed their claim before waiting the required 30 days).

Additionally, Plaintiffs are statutorily barred from bringing a claim under the CCPA as WM has cured all alleged violations of the statute as provided in the CCPA's cure provision. *See* Cal. Civ. Code § 1798.150(b); Decl. of M. Reed., Ex. B (WM's Cure Letters sent in response to Plaintiffs' statutory notice).[8] Aside from conclusory, unsupported allegations, Plaintiffs plead no

---

[7] Plaintiff Marcaurel sent her notice letter on June 21, 2021 but filed her complaint less than 30 days later on July 20, 2021. *See* Compl. ¶ 307; Complaint [ECF No. 1], *Marcaurel v. USA Waste-Management Resources, LLC*, No. 1:21-cv-06199 (S.D.N.Y. filed July 20, 2021). Plaintiff Fierro sent his notice and filed his complaint on the same day, July 19, 2021. *See* Compl. ¶ 307; Complaint [ECF No. 1], *Fierro v. USA Waste-Management Resources, LLC, et al.*, No. 1:21-cv-06147 (S.D.N.Y. filed July 19, 2021).

[8] "In considering a motion to dismiss, the Court may consider documents attached as an exhibit to the complaint or incorporated by reference in the complaint, documents that are integral to a plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Vosburgh v. Burnt Hills – Ballston Lake Ctr. Sch. Dist.*, No. 1:18-cv-1003 (MAD/CFH), 2019 WL 315054, at *4 (N.D.N.Y. Jan. 24, 2019).

facts contradicting the assertions in WM's responses to their CCPA notice letters that it has cured the noticed violations and that no further violations shall occur. *See Iqbal*, 556 U.S. at 678; *U.S. v. Erie Cty, N.Y.*, 724 F. Supp. 2d 357, 368 (W.D.N.Y. 2010) ("Legal conclusions, however, are not afforded the same presumption of truthfulness."). Plaintiffs' one sentence allegation, based on "information and belief," is insufficient to protect their CCPA claim from dismissal. *See* Compl. ¶ 307.

Finally, Plaintiffs do not plead any facts establishing that WM failed to implement reasonable security procedures and practices. The CCPA requires that the "unauthorized access and exfiltration, theft, or disclosure [was] ***a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information***." Cal. Civ. Code § 1798.150(a)(1) (emphasis added). While Plaintiffs here include generic allegations incorporating the key words from the statute, they fail to plead any factual support for these assertions. *See* Compl. ¶ 301 (alleging generally that the Incident occurred because of WM's "violation of its duty to implement and maintain reasonable security procedures and practices"). Plaintiffs do not allege a single data security practice or policy that WM allegedly failed to implement or follow or in what manner WM's security procedures and practices were allegedly unreasonable or inappropriate. Plaintiffs' conclusory allegations that WM "failed to take adequate cyber security measures to prevent the [Incident] from occurring," *id.* ¶ 70, are insufficient to state a CCPA claim and should therefore be dismissed. *See, e.g.*, *Maag v. U.S. Bank, Nat'l Ass'n*, No. 1-cv-00031-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim where plaintiff failed to "allege any facts to support the notion that [d]efendant's security was deficient" beyond unsupported, conclusory allegations that defendant "did not implement and maintain reasonable security procedures and practices, failed to effectively

monitor its systems for security vulnerabilities, and had lax security" (internal quotations and citations omitted)); *see also Iqbal*, 556 U.S. at 678; *Anderson v. Kimpton Hotel & Rest. Grp., LLC*, 19-CV-01860-MMC, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing plaintiffs' CRA claim because plaintiffs "fail[ed] to allege any facts in support of their conclusory allegation that" defendant did not implement reasonable security protocols); *Razuki v. Caliber Home Loans, Inc.*, 17-CV-1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (dismissing plaintiff's CRA claim because plaintiff's allegations "recited a few buzz words," rather than factual allegations showing how defendant's procedures were noncompliant).

### B.     Plaintiffs fail to state a claim under the UCL.

Plaintiffs' UCL claim should be dismissed because they have not alleged they lack an adequate legal remedy for harm allegedly sustained as a result of the Incident. The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertisement." Cal. Bus. & Prof. Code § 17200. "Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages." *In re Ambry Genetics Data Breach Litig.*, 2021 WL 4891610, at *8. Because restitution and injunctive relief are equitable remedies, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Id.* (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).

Plaintiffs' UCL claim in this case rests on WM's alleged failure "to implement reasonable and appropriate security measures or follow industry standards for data security," failure "to timely notify California Plaintiffs and California Class members of the [Incident]" and failure "to maintain reasonable security procedures and practices." Compl. ¶¶ 314-15. Plaintiffs further assert that WM engaged in unfair business practices by failing "to follow basic security protocols and [making] misrepresentations to current and former employees about [WM's] data security."

22

*Id.* ¶ 319.  But Plaintiffs fail to allege any facts indicating they lack an adequate legal remedy for the past harm they allegedly sustained as a result of the Incident.  Plaintiffs are therefore not entitled to equitable remedies under the UCL, and their UCL claim should be dismissed.  *See, e.g.*, *In re Ambry Genetics Data Breach Litig.*, 2021 WL 4891610, at *8-9 (dismissing UCL claim where plaintiffs failed to allege the legal remedies they sought for injuries incurred as a result of defendants' past failure to protect their personal information from a data breach were inadequate).

## C. Plaintiffs fail to state a claim under the CRA.

Plaintiffs' claim that WM violated the CRA also fails.  The CRA states that a person or entity that conducts business in California must provide appropriate notice of a data breach to affected California residents.  Cal. Civ. Code § 1798.82(a).  The CRA requires that "[t]he disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement . . . or any measure necessary to determine the scope of the breach and restore the reasonable integrity of the data system."  *Id.*  Courts have found that the CRA does not prescribe any specific "length of time between discovering a data breach and informing those affected so long as any delay in notification is reasonable."  *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *17.  In order to allege a cognizable injury arising from the alleged failure to timely notify those involved in the data breach, a plaintiff must allege "incremental harm suffered as a result of the alleged delay in notification."  *See Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016) (finding plaintiff failed to allege harm resulting from defendants' failure to promptly notify its customers of a data breach).  Mere allegations of harm resulting from the data breach itself are not enough.  *See id.*

Plaintiffs here lack statutory standing to assert a claim under the CRA because they have not alleged that they suffered any incremental harm specifically traceable to WM's alleged delay

in notifying them of the Incident, as opposed to the harm they allegedly suffered as a result of the Incident itself. *See In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014) ("Plaintiffs have not alleged any injury traceable to Adobe's alleged failure to *notify* customers of the 2013 data breach violation of Section 1798.82, because [p]laintiffs do not allege that they suffered any incremental harm as a result of the delay."). While Plaintiffs include generic allegations that WM's alleged delay "prevented [them] from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze" and that their damages incrementally increased separate and distinct from those caused by the Incident itself, Compl. ¶¶ 332-33, they do not connect those generic allegations to any specific damages that allegedly resulted from the supposed unreasonable delay. In fact, none of California Plaintiffs Marcaurel's or Fierro's alleged damages occurred before they were informed of the Incident, meaning neither Plaintiffs Marcaurel nor Fierro suffered damages that could have otherwise been prevented had WM provided an earlier notification of the breach. *See id.* ¶¶ 72-95. Accordingly, California Plaintiffs Marcaurel and Fierro lack statutory standing to pursue CRA claims, and as they are the only California Plaintiffs, the CRA claim should be dismissed.

Even if Marcaurel or Fierro had standing to pursue a CRA claim, however, Plaintiffs have failed to allege facts indicating WM's notice of the Incident was unreasonably delayed, as required under the CRA. While Plaintiffs assert that WM first detected "suspicious activity" on January 21, 2021, Plaintiffs specifically allege that that WM did not learn that the Incident affected employee PII until May 4, 2021 – less than one month before it promptly provided notice of the Incident on May 28, 2021. *See id.* ¶ 11. Plaintiffs have alleged no facts indicating there was anything unreasonable about this short delay. As such, Plaintiffs have failed to state a CRA claim upon which relief could be granted, and their CRA claim should be dismissed. *See, e.g., In re*

*Brinker Data Incident Litig.*, 2020 WL 691848, at *18 (dismissing CRA claim and finding "[p]laintiffs do not allege that [defendant] knew about the breach earlier than May 11, 2018 (the date [defendant] claims it learned of the breach) and no reasonable inference can be drawn supporting [p]laintiffs' unsubstantiated argument that [defendant] may have known about the breach earlier"); *see also Razuki*, 2018 WL 6018361, at *2 (dismissing plaintiff's CRA claim because plaintiff alleged that the defendant did not notify him until five months after the breach but failed to allege evidence that "suggest this time frame is without 'reasonable delay'").

## III. Plaintiffs' claims for declaratory and injunctive relief should be dismissed.

For the reasons above, Plaintiffs' purely derivative requests for declaratory and injunctive relief should also be dismissed for the same reasons their substantive clams fail. *See Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*, No. 15-4254, 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017) ("Plaintiff cannot sustain an independent cause of action for a declaratory judgment. A declaratory judgment is a remedy, not a cause of action."); *Chiste v. Hotels.com, L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) ("Declaratory judgment and injunctions are remedies, not causes of action.").

## CONCLUSION

Accordingly, WM respectfully requests that the Court grant its Motion in full and dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: January 7, 2022                         Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD, LLP**

*/s/ Michelle A. Reed*
Stephanie Lindemuth
One Bryant Park
New York, NY 10036
Telephone:  (212) 872-1000
Fax:  (212) 872-1002
Email: slindemuth@akingump.com


Michelle A. Reed (*pro hac vice*)
Elizabeth D. Scott (*pro hac vice*)
Haley M. High (*pro hac vice*)
2300 North Field Street
Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Fax: (214) 969-4343
Email: mreed@akingump.com
        edscott@akingump.com
        hhigh@akingump.com


*Counsel for USA Waste-Management Resources, LLC*